ORAL ARGUMENT NOT YET SCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____
)
CHESAPEAKE BAY FOUNDATION, )
INC. et al., )
)
          Petitioners, )
)
    v. )    Docket No. 13-1200
)    (and consolidated cases)
UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY, et al., )
)
          Respondents. )
_____ )

**EPA'S UNOPPOSED MOTION FOR PARTIAL VOLUNTARY REMAND**

Pursuant to Circuit Rule 41(b), Respondents United States Environmental Protection Agency, et al., ("EPA") move for voluntary remand without vacatur of the numeric emission standards set in the EPA rulemaking: "Reconsideration of Certain New Source Issues: National Emission Standards for Hazardous Air Pollutants from Coal- and Oil-Fired Electric Utility Steam Generating Units," 78 Fed. Reg. 24,073 (April 24, 2014) ("New Source MATS Reconsideration Rule").[1]

Petitioners Chesapeake Bay Foundation, Inc.; Clean Air Council; Sierra Club; and Intervenor Ohio Environmental Council have represented through

---

[1] EPA is also filing today a motion to suspend briefing in this case pending resolution of this motion for partial remand.

1

counsel that they do not oppose the relief requested. All remaining parties (Petitioner Utility Air Regulatory Group and Intervenors Sunflower Electric Power Corp., Tri-State Generation and Transmission Association, Power4Georgians, LLC, Environmental Defense Fund, Calpine Corp., Exelon Corp., National Grid Generation, LLC, and Public Service Enterprise Group) have represented through counsel that they take no position.

## BACKGROUND

The consolidated petitions in this action seek review of an EPA rulemaking, "Reconsideration of Certain New Source Issues: National Emission Standards for Hazardous Air Pollutants from Coal- and Oil-Fired Electric Utility Steam Generating Units," 78 Fed. Reg. 24,073 (April 24, 2014) ("New Source MATS Reconsideration Rule"). This rule set numeric standards pursuant to section 112 of the Clean Air Act, 42 U.S.C. § 7412, for new and reconstructed electric utility steam generating units ("EGUs") that are sources of hazardous air pollutants, as well as revising certain monitoring requirements for new and reconstructed EGUs. In this motion, EPA seeks a voluntary remand without vacatur of all of the numeric standards for new and reconstructed EGUs set forth in the New Source MATS Reconsideration Rule so that it can review the variability analysis used in establishing those standards in light of the Court's decision in *National Association of Clean Water Agencies v. EPA*, 734 F.3d 1115 (D.C. Cir. 2013) ("*NACWA*").

## ARGUMENT

EPA seeks a remand of the numeric standards for new and reconstructed EGUs set in the New Source MATS Reconsideration Rule so that the Agency can reconsider those standards in light of this Court's opinion in *NACWA*.

In *NACWA*, the Court reviewed an EPA regulation establishing, pursuant to 42 U.S.C. § 7429, emission standards for sewage sludge incinerators ("SSI Rule"). The Court remanded the SSI Rule to EPA for, *inter alia*, further explanation of the Agency's methodology for accounting for variability, including the use of a statistical methodology referred to as the Upper Prediction Limit ("UPL"), in setting numeric Maximum Achievable Control Technology ("MACT") standards for those incinerators. 734 F.3d at 1151. Furthermore, the Court specifically instructed EPA to "explain on remand why the upper prediction limit is a reasonable estimate of what an incinerator would achieve under the worst foreseeable conditions for incinerators with smaller data sets." 734 F.3d at 1144. The Court noted that, in at least one case in the SSI Rule, application of the UPL methodology would have resulted in establishing a standard for new sources that was less stringent than that for existing sources. *Id.* at 1155-56. (EPA addressed that anomalous result by setting the new source standard equal to the existing source standard. *Id.* at 1156.)

The variability analysis used in establishing the numeric MACT standards for EGUs set in the New Source MATS Reconsideration Rule also used the UPL methodology.[2] Moreover, the numeric standards were set using data sets consisting of six data points or fewer, and in one instance the UPL methodology resulted in the calculation of a new source MACT standard less stringent than the MACT standard for existing sources. While EPA believes that it could adequately explain why the Agency's use of the UPL in general is consistent with Clean Air Act requirements through a remand of the record only for a limited time (and is accordingly seeking a remand of the record in other cases where this issue is presented; specifically Nos. 11-1108 and 11-1125), EPA believes the question of whether the UPL is an appropriate statistical method for small data sets requires more analysis. Accordingly, EPA is seeking a voluntary remand without vacatur of all of the numeric MACT limits for new and reconstructed EGUs established in the New Source MATS Reconsideration Rule. Those standards are set forth in 40 C.F.R. Part 63, Subpart UUUUU, Table 1 (78 Fed. Reg. at 24,087-90).

Voluntary remand is supported by the case law where, as here, the agency has determined that its prior action requires reconsideration for substantive or

---

[2] Although the SSI rule was issued under section 7429 and the New Source MATS Reconsideration Rule was issued under section 7412, as the Court held in *NACWA*, "the statutory directive on setting MACT standards is virtually identical" under the two sections. 734 F.3d at 1119. *Compare* 42 U.S.C. §§ 7412(d)(3) and 7429 (a)(2).

4

procedural reasons. *See, e.g.*, *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) ("We commonly grant such motions [for remand], preferring to allow agencies to cure their own mistakes rather than waste the courts' and parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete."). *See also California Communities Against Toxics v. EPA,* 688 F.3d 989, 992 (9th Cir. 2012) ("Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith.").

During the remand period, EPA will review its methodology for calculating the remanded standards and expects to conduct additional notice and comment rulemaking. Remand will therefore serve the interests of judicial economy because the issues concerning those standards may become moot or may be significantly narrowed upon remand.

Remand without vacatur is the most appropriate procedural mechanism that will allow EPA to complete this process, and is the remedy the Court ordered in *NACWA*. EPA is seeking a remand of these standards to address the claim by Environmental Petitioners that EPA's statistical methodology has resulted in standards that are insufficiently stringent. Vacatur of these new source numerical MATS standards would result in no CAA section 112(d) standards being in place. The Court has previously recognized the value of leaving standards in place when vacatur would eliminate the environmental benefits accruing from the standards.

*See North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008) (noting that remand without vacatur may "at least temporarily preserve the environmental values" that may have been achieved by a remanded rule); *Environmental Defense Fund v. Administrator*, 898 F.2d 183, 190 (D.C. Cir. 1990) (remand appropriate where vacatur would "at least temporarily defeat petitioner's purpose, the enhanced protection of the environmental values covered by the PSD provisions").

## CONCLUSION

EPA's motion for partial remand without vacatur should be granted.

>　　　　　　　　　Respectfully submitted,
>
>　　　　　　　　　ROBERT G. DREHER
>　　　　　　　　　Acting Assistant Attorney General
>
>　　　　　　　　　<u>/S/ AMANDA SHAFER BERMAN</u>
>　　　　　　　　　ERIC G. HOSTETLER
>　　　　　　　　　AMANDA SHAFER BERMAN
>　　　　　　　　　Environmental Defense Section
>　　　　　　　　　Environment & Natural Resources Division
>　　　　　　　　　United States Department of Justice
>　　　　　　　　　P.O. Box 7611
>　　　　　　　　　Washington, D.C. 20044
>　　　　　　　　　(202) 616-7568
>　　　　　　　　　Counsel for Respondents

March 5, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of March, 2014, I caused a copy of the foregoing document to be served by the Court's CM/ECF system on all counsel of record in this matter.

/S/ Amanda Shafer Berman
Amanda Shafer Berman
